IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DEBRA REKIEL, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CA NO. 6:18-CV-0025-ADA-JCM |
| | § | |
| WARDLAW CONSULTING SERVICES, INC., | § | ORAL HEARING REQUESTED |
| WARDLAW CLAIMS SERVICE, LLC, | § | LOCAL RULE 7(H) |
| WCCA, INC., WARDLAW CLAIMS TRAINING | § | |
| CENTER, LLC, CUSTOM DATA SYSTEMS, | § | |
| INC., WCS SERVICES, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

---

## WARDLAW CONSULTING SERVICES, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Respectfully Submitted,

**JOHN L. ROSS**[1]
Texas State Bar No. 17303020
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:    (214) 871-8206
Fax:              (214) 871-8209
Email:  jross@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

---

[1] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization.

Table of Contents

Page

Index of Authorities                                                    iii

INTRODUCTION                                                             1

OPERATIVE FACTS                                                          2

SUMMARY JUDGMENT STANDARDS                                              6

ARGUMENT                                                                 7

I.

AS A MATTER OF LAW, WARDLAW IS ENTITLED TO SUMMARY JUDGMENT
THAT PLAINTIFF BREACHED HER EMPLOYMENT AGREEMENT.                        7

II.

AS A MATTER OF LAW, WARDLAW IS ENTITLED TO SUMMARY JUDGMENT
THAT PLAINTIFF BREACHED FIDUCIARY DUTIES OWED TO WARDLAW.               10

III.

AS A MATTER OF LAW, PLAINTIFF'S STATUTE OF LIMITATIONS DEFENSE IS
WITHOUT MERIT REGARDING ANY OF WARDLAW'S COUNTERCLAIMS.                 11

IV.

PLAINTIFF'S BREACHES OF CONTRACT AND FIDUCIARY DUTY ENTITLE
WARDLAW TO TREAT THE EMPLOYMENT AGREEMENT AS REPUDIATED;
THEREBY (1) RELEASING IT FROM FURTHER OBLIGATIONS UNDER THE
AGREEMENT; AND (2) ENTITLING IT TO RECOUP ALL INCOME PAID TO
PLAINTIFF AFTER AUGUST 15, 2016.                                        11

V.

WARDLAW IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
FRAUD IN THE INDUCEMENT, FRAUD AND PROMISSORY ESTOPPEL CLAIMS.          14

A. Fraudulent Inducement: Plaintiff Has Produced No Evidence On The Third,
   Fifth, Or Sixth Elements Of Her Prima Facie Case                     14

B. Wardlaw Is Entitled To Summary Judgment On Plaintiff's Fraud And
   Promissory Estoppel Claims                                           16

PAGE

1. A Promissory Estoppel Claim is Precluded By the Existence of a Valid, Express Contract                                                                                      17

2. Fifth Element: Plaintiff Has Produced No Evidence of Reasonable/ Detrimental Reliance                                                                                    17

3. First and Third Elements: No Evidence of Knowingly False Statement         17

4. The Claims Are Barred By The "Economic Loss Rule"                                     18

VI.

WARDLAW IS ENTITLED TO PARTIAL SUMMARY JUDGMENT FOR ANY BREACH OF CONTRACT CLAIM BASED ON COMPENSATION PAID BEFORE JANUARY 1, 2013.   18

VII.

AS A MATTER OF LAW, AS OF JANUARY 1, 2013, ¶¶ 2.01 AND 2.02 NO LONGER GOVERNED PLAINTIFF'S COMPENSATION.                                                         18

VIII.

THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM AND ANY BREACH OF CONTRACT CLAIM BASED ON COMMISSIONS ALLEGEDLY DUE BEFORE JANUARY 27, 2014.                                                    21

A. AS A MATTER OF LAW, THE DISCOVERY RULE IS WHOLLY INAPPLICABLE            22

B. AS A MATTER OF LAW, PLAINTIFF'S FRAUDULENT CONCEALMENT ALLEGATIONS ARE WITHOUT MERIT                                                                                              23

CONCLUSIONS AND REQUESTED RELIEF                                                          26

INDEX OF AUTHORITIES

PAGE(S)

CASES:

*Allamon v. Acuity Spec. Prod., Inc.*,
   877 F. Supp. 2d 498 (E.D. Tex. 2012),
   *aff'd*, 534 Fed. App'x. 248 (5th Cir. 2013)        16, 21, 24

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)        6

*Bartush–Schnitzius Foods Co. v. Cimco Refrig., Inc.*,
   518 S.W.3d 432 (Tex. 2017)        12

*Bd. of Regents of Univ. of Tex. v. S & G Const. Co.*,
   529 S.W.2d 90 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.)        11-12

*Beavers v. Metro. Life Ins. Co.*,
   566 F.3d 436 (5th Cir. 2009)        23

*BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*,
   2008 WL 1991738 (Tex. App.—Houston [14th Dist.]
   May 8, 2008, pet. denied)        16, 17

*BP Am. Prod. Co. v. Marshall*,
   342 S.W.3d 59 (Tex. 2011)        26

*Burrow v. Arce*,
   997 S.W.2d 229 (Tex. 1999)        12, 13, 14

*Cahak v. Rehab Care Group, Inc.*,
   2008 WL 3112083 (Tex. App.—Waco Aug. 6, 2008, n.p.h.)        16

*Cao v. BSI Fin. Serv., Inc.*,
   2017 WL 5157625 (S.D. Tex. Oct. 19, 2017),
   *rep. and recomm. adopted*, 2017 WL 5133289 (S.D. Tex. Nov. 6, 2017)        23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)        6

PAGE(S)

*Cent. Texas Ortho. Prod., Inc. v. Espinoza*,
    2009 WL 4670446 (Tex. App.—San Antonio Dec. 9, 2009, pet. denied)    13

*Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.*,
    2018 WL 1415650 (E.D. Tex. Feb. 23, 2018)    24

*Cody Texas, L.P. v. BPL Expl., Ltd.*,
    513 S.W.3d 522 (Tex. App.—San Antonio 2016, pet. denied)    22, 26

*DAC Surg. Partners P.A. v. United Healthcare Serv., Inc.*,
    2016 WL 7177881, (S.D. Tex. Dec. 8, 2016)    11

*Doe v. Henderson ISD*,
    2000 WL 1701752 (5th Cir. 2000)    23

*Dortch v. Boxer Prop. Mgmt. Corp.*,
    2018 WL 3431733 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.)    21

*ERI Consulting Engineers, Inc. v Swinnea*,
    318 S.W.3d 867 (Tex. 2010)    13

*First United Pentecostal Church v. Parker*,
    514 S.W.3d 214 (Tex. 2017)    12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009)    15

*Garcia v. Lion Mexico Consol. L.P.*,
    2018 WL 6427350 (W.D. Tex. Sept. 14, 2018)    24

*Gillmann v. Fisher*,
    2018 WL 6430833 (W.D. Tex. July 23, 2018),
    *rep. and recomm. adopted*, 2018 WL 6430831 (W.D. Tex. Sept. 26, 2018)    11

*Ginn v. NCI Bldg. Sys., Inc.*,
    472 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2015, no pet.)    15

*Hall v. Douglas*,
    380 S.W.3d 860 (Tex. App.—Dallas 2012, n.p.h.)    15

*Halprin v. FDIC*,
    2018 WL 4088795 (W.D. Tex. Aug. 27, 2018)    8

PAGE(S)

*Hanks v. GAB Bus. Servs., Inc.,*
    644 S.W.2d 707 (Tex. 1982)        8

*Hanold v. Raytheon Co.,*
    662 F.Supp.2d 793 (S.D. Tex. 2009)      16

*Hathaway v. Gen. Mills, Inc.,*
    711 S.W.2d 227 (Tex. 1986)      21

*HECI Exploration Co. v. Neel,*
    982 S.W.2d 881 (Tex. 1998)      23

*Henry v. Masson,*
    333 S.W.3d 825 (Tex. App.—Houston [1st Dist.] 2010, no pet.)    8, 9

*Hernandez v. Frazier,*
    2012 WL 12896913 (W.D. Tex. Jan. 26, 2012)    24

*Humphrey v. Camelot Ret. Cmty.,*
    893 S.W.2d 55 (Tex. App.—Corpus Christi 1994, no writ)    12

*Ikon Office Solutions, Inc. v. Eifert,*
    125 S.W.3d 113 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)    15

*In re Halliburton Co.,*
    80 S.W.3d 566 (Tex. 2002), *cert. denied*, 537 U.S. 1112 (2003)    21

*In re Simons Broad., L.P.,*
    2013 WL 9542015 (W.D. Tex. Nov. 19, 2013)    12

*Jacquez v. Compass Bank,*
    2016 WL 3017418 (W.D. Tex. May 24, 2016)    15

*Janvey v. Dem. Sen. Camp. Comm.,*
    793 F. Supp. 2d 825 (N.D. Tex. 2011), *aff'd*, 712 F.3d 185 (5th Cir. 2013)    23

*Jim Walter Homes, Inc. v. Reed,*
    711 S.W.2d 617 (Tex. 1986)    18

*Joe Hand Promotions, Inc. v. Alvarado,*
    2017 WL 3027227 (W.D. Tex. Mar. 13, 2017)    7

PAGE(S)

*L. G. Balfour Co. v. Brown,*
110 S.W.2d 104 (Tex. Civ. App.—Fort Worth 1937, no writ)               21

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
242 S.W.3d 1 (Tex. 2007)                                               18

*Lightsource Analytics, LLC v. Great Stuff, Inc.,*
2014 WL 798069 (W.D. Tex. Feb. 27, 2014)                               15

*Little v. Smith,*
943 S.W.2d 414 (Tex. 1997)                                             22

*Long Trusts v. Griffin,*
222 S.W.3d 412 (Tex. 2007)                                             8, 9

*Malik v. ConocoPhillips Co.,*
2014 WL 3420775, at 5 (E.D. Tex. June 23, 2014)                        11

*Mandel v. Thrasher,*
578 Fed. App'x. 376 (5th Cir. 2014)                                    10

*Martinez v. Bally's La., Inc.,*
244 F.3d 474 (5th Cir. 2001)                                           8

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
475 U.S. 574 (1986)                                                    6

*Miller Global Prop., LLC v. Marriott Int'l, Inc.,*
418 S.W.3d 342 (Tex. App.—Dallas 2013, pet. denied)                    16

*Moreno v. Sterling Drug,*
787 S.W.2d 348 (Tex. 1990)                                             21

*Murphy v. Campbell,*
964 S.W.2d 265 (Tex. 1997)                                             21

*Navigant Consult., Inc. v. Wilkinson,*
508 F.3d 277 (5th Cir. 2007)                                           10

*Newby v. Enron Corp.,*
490 F.Supp.2d 784 (S.D. Tex. 2007)                                     24

PAGE(S)

*Orbison v. Ma-Tex Rope Co., Inc.*,
  553 S.W.3d 17 (Tex. App.—Texarkana 2018, pet. denied)          10, 13

*Ortega v. Murrah*,
  2016 WL 6803359 (Tex. App.—Houston [1st Dist.]
  Nov. 17, 2016, pet. denied)                                    21

*Pemex Exploracion y Produccion v. BASF Corp.*,
  2013 WL 5514944 (S.D. Tex. Oct. 1, 2013)                       22

*Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*,
  346 S.W.3d 37 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)   15

*Pointe W. Ctr., LLC v. It's Alive, Inc.*,
  476 S.W.3d 141 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)   21

*Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*,
  2018 WL 446320 (E.D. Tex. Jan. 17, 2018)                       17

*Rimkus Consult. Group, Inc. v. Cammarata*,
  688 F. Supp. 2d 598 (S.D. Tex. 2010)                           10

*Sawyer v. E.I. Du Pont De Nemours and Co.*,
  430 S.W.3d 396 (2014)                                          17

*Schwager v. Telecheck Servs., Inc.*,
  2002 WL 31995012 (Tex. App.—Houston [14th Dist.] Dec. 19, 2002, n.p.h.)   15

*Sharyland Water Supply Corp. v. City of Alton*,
  354 S.W.3d 407 (Tex. 2011)                                     18

*Slusser v. Union Bankers Ins. Co.*,
  72 S.W.3d 713 (Tex. App.—Eastland 2002, no pet.)               23, 25, 26

*Songcharoen v. Plastic & Hand Surgery Assoc., PLLC*,
  561 Fed. App'x. 327 (5th Cir. 2014)                            11

*Spring v. Walthall, Sachse & Pipes, Inc.*,
  2010 WL 2102988 (Tex. App.—San Antonio May 26, 2010, no pet.)  22

*Stine v. Stewart*,
  80 S.W.3d 586 (Tex. 2002)                                      21-22

PAGE(S)

*Sw. Refrig. Wh. Serv. v. M.A. & Sons, Inc.*,
  2018 WL 6583906 (W.D. Tex. Dec. 14, 2018)  8

*Taha v. William Marsh Rice Univ.*,
  2011 WL 6057846 (S.D. Tex. Dec. 6, 2011)  23

*Truman Arnold Cos. v. Hammond & Consult. Enterprises, Inc.*,
  2010 WL 2982912 (Tex. App.—Tyler July 30, 2010, no pet.)  22, 26

*United Teacher's Assoc. Ins. Co. v. MacKeen & Bailey, Inc.*,
  847 F.Supp. 521 (W.D. Tex. 1994),
  *aff'd in relevant part*, 99 F.3d 645 (5th Cir. 1996)  12

*Vera v. Bank of Am., N.A.*,
  569 Fed. App'x. 349 (5th Cir. 2014)  8

*Via Net v. TGI Ins. Co.*,
  211 S.W.3d 310 (Tex. 2006)  22, 23

*Wagner & Brown, Ltd. v. Horwood*,
  58 S.W.3d 732 (Tex. 2001)  22

*Windsor v. Olson*,
  2019 WL 2080021 (N.D. Tex. May 10, 2019)  10

*Wooters v. Unitech Int'l, Inc.*,
  513 S.W.3d 754 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)  10

*WorldVentures Mktg., LLC v. Rogers*,
  2018 WL 4169049 (E.D. Tex. Aug. 30, 2018)  8, 9

*Yesteryear Auto LLC v. Synergistic Int'l LLC*,
  2018 WL 7377942 (W.D. Tex. Dec. 21, 2018)  23-24

OTHER AUTHORITIES:

18 U.S.C. § 1030 (g)  11

18 U.S.C. § 1836 (d)  11

*Fed. R. Civ. P.* 56(c)  6

|  | PAGE(S) |
|---|---|
| RESTATEMENT (SECOND) OF AGENCY § 469 | 13 |
| RESTATEMENT (THIRD) OF AGENCY § 8.01, cmt. d.2 | 13 |
| TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) | 11, 21 |
| TEX. CIV. PRAC. & REM. CODE § 16.010) | 11 |
| TEX. CIV. PRAC. & REM. CODE 16.051) | 11, 21 |
| TEX. CIV. PRAC. & REM. CODE § 143.001 (b) | 11 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DEBRA REKIEL, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CA NO. 6:18-CV-0025 |
| | § | |
| WARDLAW CONSULTING SERVICES, INC., | § | ORAL HEARING REQUESTED |
| WARDLAW CLAIMS SERVICE, LLC, | § | LOCAL RULE 7(H) |
| WCCA, INC., WARDLAW CLAIMS TRAINING | § | |
| CENTER, LLC, CUSTOM DATA SYSTEMS, | § | |
| INC., WCS SERVICES, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

## INTRODUCTION

The crux of Plaintiff's suit is her contention that throughout her employment with Wardlaw Consulting Services, Inc. ("Wardlaw") she was shorted in the commissions she believes should have been paid under her employment agreement. She also contends she was fraudulently induced to enter into the agreement and that after beginning employment fraudulent representations were made to her concerning the accuracy of her commission payments. Wardlaw has filed counterclaims, contending that Plaintiff breached her employment agreement and her fiduciary duties and violated other statutory obligations to Wardlaw by misappropriating confidential, proprietary documents.

For the reasons explained herein, as a matter of law Wardlaw is entitled to summary judgment:

➢ on its counterclaims for breach of contract and breach of fiduciary duties;

➢ on Plaintiff's statute of limitations affirmative defense to Wardlaw's counterclaims;

➢ that as a result of Plaintiff's breaches of contract and fiduciary duty, Wardlaw is entitled to treat the employment agreement as repudiated as of August 15, 2016, and, therefore, is entitled to (1) declaratory judgment that it has no further obligations under the agreement; and (2) return of all commissions paid to Plaintiff on and after August 15, 2016;

1

➢ on Plaintiff's fraud in the inducement, fraud, and promissory estoppel claims;

➢ on any breach of contract claim based on salary and commission payments to Plaintiff before January 1, 2013;

➢ that Plaintiff's fraudulent inducement claim is barred by limitations, as is any breach of contract claim which is based on commissions allegedly due before January 27, 2014; and

➢ that as of January 1, 2013, ¶¶ 2.01 and 2.02 no longer governed Plaintiff's entitlement to compensation.

## OPERATIVE FACTS

Wardlaw is an independent insurance claims adjusting company headquartered in Waco, Texas. Wardlaw manages auto, bodily injury, property, and weather-related catastrophe claims for various insurance companies. Ex. 31.[2]

Plaintiff began working for Wardlaw from her home in Florida in October 2011 as Vice President of Business Development, under an employment agreement (Ex. 3) which provided for compensation under one of two methods:

➢ (1) payment of (a) $120,000 annual salary (paid $5,000 per twice monthly pay period) (*id*., ¶ 2.01); plus (b) a 5% commission of all "service fees" received from clients/customers Plaintiff generated (*id*., ¶ 2.02); or

➢ (2) upon notice to Plaintiff, a 1% commission on service fees received from *all* Wardlaw clients/customers, regardless of whether Plaintiff generated the client (with a $120,000 annual minimum guarantee). *Id*., ¶ 2.03.

The agreement also provided that all notices required under the agreement were to be in writing (*id*., ¶ 10.01) and the agreement purportedly could not be modified, except in writing signed by both parties. *Id*., ¶ 10.03. Despite the existence of a written employment agreement, Plaintiff was an employee-at-will. *Id*., ¶¶ 1.01 and 9.01. However, if her employment terminated, unless termination was for "good cause," the agreement required Wardlaw to continue to pay Plaintiff for three years in the same manner in which she was being compensated at the

---

[2] Unless otherwise indicated, references to exhibits are to the exhibits contained in the *Appendix* being concurrently filed. Where the exhibit consists of excerpts from a deposition, page:line references are parenthetically indicated.

time of termination. *Id.*, ¶ 9.02. Plaintiff was terminated on March 15, 2018. Docket No. 63 ¶ 33. The termination was for other than "good cause" as defined in the agreement. *Id.*[3] Thus, Wardlaw continued to pay Plaintiff commissions following the termination. Exs. 29, 30, 33.

From October 11, 2011, through December 31, 2012, Wardlaw compensated Plaintiff pursuant to ¶ 2.01 ($5,000 salary per pay period) and ¶ 2.02 (plus 5% commission on business Plaintiff generated) under the agreement. Exs. 4-7, 32. Beginning January 1, 2013, Wardlaw exercised its option to pay Plaintiff under ¶ 2.03 (1% of all service fees) of the agreement. Exs. 8, 31.

The employment agreement (Ex. 3) also contained a number of confidentiality provisions, *e.g.*, ¶ 5.01 (computers are for business use only), ¶ 5.02 (Wardlaw has vital interest in security and integrity of computer system and Plaintiff agrees to abide by all security procedures), and, *inter alia* (emphasis added):

> [¶ 6.01]: The Employee acknowledges . . . [she] will necessarily receive access to trade secrets and confidential information belonging to the Employer. This material may include *independent adjuster names and contact information, customer lists and contact information, pricing methods and schedules, marketing methods, confidential strategy and marketing memos*. The Employee agrees that she will not use any trade secrets or confidential information for her own benefit . . . and she will take care to guard the security of the information at all times.

> [¶ 6.02]: . . . *All files, documents*, equipment, software, *and similar items, whether existing physically or in electronic form, that contain or pertain to the Employer's trade secrets are and will remain the property of the Employer. They may not be removed from the Employee's work area without permission*, and must be returned to the Employer at the conclusion of the employment relationship. *Information maintained online must not be transferred to the Employee's personal computer system or any other system not controlled by the Employer. The Employee agrees not to make and keep copies of any confidential or trade secret information for personal use, and agrees to return any copies* made for backup during the course of employment on termination of this Agreement.[4]

---

[3] Plaintiff does not contend her termination was wrongful. Ex. 1 (76:10-12).

[4] Plaintiff fully acknowledges these confidentiality obligations. Ex. 1 (20:23 to 23:20); Docket No. 63 (p. 14, ¶¶ 16 and 20).

3

Despite these confidentiality provisions, in her deposition on February 1, 2019 (Ex. 1 (120:4 to 161:5)), in responses to a set of requests for admissions (Ex. 2), and in documents produced by Plaintiff in discovery (Sealed Exs. 1-151), Plaintiff admits that beginning **August 15, 2016**, and continuing periodically **until May 24, 2017**, from a location in Florida, Plaintiff without permission surreptitiously accessed Wardlaw's computer system in Texas, using a Wardlaw-issued computer and transferred copies of *hundreds* of confidential, proprietary documents—nearly 1,400 pages—to her private Gmail account over which Wardlaw exercised no control. The documents Plaintiff misappropriated included, *inter alia*:[5]

➢ **Financial Documents:** Sealed Exs. 1 (statements of revenues and expenses, partners' capital, balance sheets, accountant's report, *etc*.), and 43 (statements of revenues and expenses, partners' capital, balance sheets, accountant's report, *etc*.).

➢ **Adjuster Names and Contact Information:** Sealed Exs. 13-20, 24, 28 (list of adjusters and their contact information), 45 (adjuster names), 65 (adjuster names), 131 (list of adjusters, contact information, and identification of claims by adjuster), and 150 (list of adjusters, and identification of claims by adjuster).

➢ **Customer Lists and Contact Information:** Sealed Exs. 5 (list of clients), 6, 9-26, 29-31, 33-37, 40, 41, 45-47, 53-55, 57, 58-61, 63-66, 68-73, 75-86, 88, 91, 92, 94-96, 99-104, 106, 108, 110-118, 123-126, 132, 133-134, 135 (client list), 138, 140, 144, 145 (client list), 147, 148, 150 (client claims list), and 151 (client list).

➢ **Customer/Client Contracts:** Sealed Exs. 19 (State Farm Independent Adjuster Services Agreement ("IASA")), 20 (completed IASA), 30 (Allstate Professional Services Agreement ("PSA")), 34 (Allstate Vendor Security Questionnaire), 35 (same), 36 (same), 45 (signed Farmers' IASA), 68 (Farmers' Mutual Confidentiality and Non-Disclosure Agreement ("MCN-DA")), 69 (Farmers' MCNDA), 70 (executed Farmers' MCNDA), 71 (Allstate PSA), 77 (Farmers' Services Agreement), 84 (edited Farmers' IASA), 99 (Farmers' MCNDA), 100 (edited and signed Farmers' MCNDAs), and 106 (edited Farmers' IASAs).

➢ **Confidential Documents of Clients:** Sealed Exs. 13 (State Farm computer security policies), 14 (same), 18 (same), 30 (Allstate's security policies), 33 (Allstate password), 34 (Allstate

---

[5] Because of the confidential, proprietary information contained in the documents, they are being submitted to the court as a separate sealed appendix with a motion for leave to file them under seal, per *Local Rule* CV 5.2. Exhibits in that sealed appendix will be referred to as "Sealed Ex. ___."

4

Vendor Security Questionnaire, user name), 35 (same), 36 (same; security policies), 45 (Farmers' security policies), 65 (State Farm computer security policies), 72 (Farmers' RFP—stamped by Farmers as "Confidential Information-Vendor Management Not to be disclosed without prior written permission"), 73 (Farmers' password), 76 (Allstate Security Standards), 77 (Farmers' security policies), 81 (Farmers' security review, copyrighted client material), 84 (Farmers' security policies), and 106 (Farmers' security policies).

➤ **Pricing Methods and Schedules:** Sealed Exs. 19 (fee schedule), 20 (day rate price), 45 (fee schedule and auto and property rate sheets), 77 (several pricing schedules and retainer rates), 84 (several pricing schedules and retainer rates), 106 (several pricing schedules and retainer rates), 107 (water mitigation fee schedule), 125 (admin fees), 134 (claim service fee information), 136 (fee schedules), and 141 (fee schedule).

➤ **Marketing Strategy, Methods, and Memos:** Sealed Exs. 2-4, 5 (marketing report), 6-15, 17-27, 29-30, 31 (report on marketing efforts), 32-35, 36 (marketing materials), 37-47, 48 (Farmers' marketing report), 49-52, 53 (marketing materials), 54, 55, 56 (report on Farmers' meeting), 57-61, 62 (Farmers' marketing report), 63-66, 67 (report on Farmers), 68-71, 72 (client request for proposal), 73, 74 (report on Allstate meeting), 75-78, 79 (RFP responses), 80 (RFP responses), 81-88, 89 (report on Farmers' meeting), 90, 91 (marketing materials), 92, 93 (report on Farmers), 94-96, 97 (report regarding Farmers), 98-101, 102 (RFP from Farmers), 103 (proposed RFP responses), 104 (RFP responses), 105-110, 111 (report on Encompass), 112 (Intrepid), 113, 114 (Meemic/Freemont), 115 (Hartford), 116 (Mercury), 117 (Assurant), 118 (proposal), 119-126, 128-149, 150 (RFP responses), and 151 (report on clients).

➤ **Attorney Client Communications Between Wardlaw and Its Attorney:** Sealed Ex. 22.

➤ **Wardlaw Security Information:** Sealed Exs. 42 (spreadsheet of Wardlaw security policies, practices and procedures), and 82 (Wardlaw IT, computer backup, data breach, anti-virus, facility, password, remote access, risk assessment, router, server and VPN policies).

➤ **Other Confidential/Proprietary Information:** Sealed Exs. 36 (proprietary information regarding Wardlaw's water mitigation program developed by Wardlaw), 44 (company claim processing data and statistics), 45 (adjuster map, organizational information, *etc.*), 87 (120 page spreadsheet of proprietary company policies, practices, and procedures), 131 (confidential claim processing information, *e.g.*, name of insured, claim number, *etc.*), 134 (confidential claim processing information), 135 (proprietary claim processing information and management "dashboard"), 145 (proprietary claim processing information and management "dashboard"), and 150 (confidential claim processing information, *e.g.*, name of insured, claim number, *etc.*).

Following Plaintiff's admissions to the foregoing during her deposition on February 1, 2019,

Wardlaw terminated further payments to Plaintiff, effective February 9, 2019. Ex. 33.

## SUMMARY JUDGMENT STANDARDS

A party is entitled to summary judgment on all or any part of a claim regarding which (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Fed. R. Civ. P.* 56(c). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 256.

If the burden of proof at trial lies with the non-moving party, the movant may either (1) submit summary judgment evidence which conclusively negates the existence of at least one material element of the opponent's claim or defense, or (2) after adequate time for discovery has passed, identify at least one essential element of the non-movant's claim for which the non-movant has presented insufficient evidence to raise a genuine issue of material fact. *E.g.*, *Celotex*, 477 U.S. at 330. Once the moving party has identified the challenged elements of the non-movant's claims, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-587 (1986). A fact is not "material" unless its resolution in favor of one party might affect the outcome of the suit under governing law, and a dispute regarding a material fact is not "genuine" unless the evidence is sufficient for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and *s*ummary judgment is mandatory unless the non-movant makes a sufficient showing on each challenged element. *Celotex*, 477 U.S. at 322-25.

6

## ARGUMENT

### I.

**AS A MATTER OF LAW, WARDLAW IS ENTITLED TO SUMMARY JUDGMENT THAT PLAINTIFF BREACHED HER EMPLOYMENT AGREEMENT.**

From her own deposition testimony (Ex. 1 (120:4 to 161:5)),[6] her responses to the requests for admissions (Ex. 2),[7] and the stolen documents themselves (Sealed Exs. 1-151), the summary judgment evidence conclusively establishes that beginning August 15, 2016, and continuing periodically until May 24, 2017, Plaintiff repeatedly breached the confidentiality provisions of her employment agreement. However, in her deposition Plaintiff repeatedly asserted that she was *justified* in doing so because—according to her—Wardlaw had already breached the agreement by failing to properly pay her commissions.[8, 9] Plaintiff's contention is without merit. Even assuming, *arguendo*, Wardlaw had breached the agreement, Plaintiff remained bound by the agreement as a matter of law.

---

[6] *See* in particular, *e.g.*, Ex. 1 (20:23 to 23:20, acknowledging her obligations under the employment agreement); 121:24 to 122:2: "Q. Okay. When you sent Exhibit 61 to yourself, you didn't comply with that provision of your agreement, did you, ma'am? A. No."); 131:25 to 132:2: "Q. That violated your confidentiality agreement, didn't it? A. Yes. . . ."); 175:25 to 176:2: "Q. . . . You didn't comply with that obligation either, did you, ma'am? A. No."); 182:1 to 182:4: "Q. . . . You did not comply with the requirement in the employment agreement to return all copies of Wardlaw documents, did you? A. That's true."); 184:2 to 184:14: "Q. You didn't comply with the agreement when you e-mailed that notebook full of documents to your unsecured Gmail account, did you? [objection omitted; question read back] A. No.")).

[7] *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Alvarado*, 2017 WL 3027227, at 1 (W.D. Tex. Mar. 13, 2017) ("Rule 36 admissions are conclusive as to the matters admitted and cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record.").

[8] *See* Ex. 1 (129:22 to 130:2:"Q. You weren't above board with Wardlaw, were you, ma'am? A. I believed they were—had already breached the contract. So the contract was breached already."); 132:2; 181:16; 183:20-21; 183:24).

[9] Plaintiff testified she first concluded Wardlaw had breached the employment agreement in July 2016, before she began misappropriating documents. *See* Ex. 1 (133:10 to 133:25: "Q. So is it your testimony to the jury that July 2016 is when you first concluded that Wardlaw had breached its employment agreement with you? A. It's when I—yes.").

7

Plaintiff's contention to the contrary is based on a fallacious legal supposition. Specifically, although Plaintiff claims Wardlaw had first breached the employment agreement, by her own actions in (1) continuing for several years to treat the employment agreement as continuing and accepting commissions under it; and (2) suing on the contract to enforce it,[10] Plaintiff bound herself to comply with the agreement. *See*, *e.g.*, *Vera v. Bank of Am., N.A.*, 569 Fed. App'x. 349, 352 (5th Cir. 2014) (*per curiam*); *Sw. Refrig. Wh. Serv. v. M.A. & Sons, Inc.*, 2018 WL 6583906, at 4 (W.D. Tex. Dec. 14, 2018) (defendant treated storage contract as continuing, so it was not excused from performance); *Long Trusts v. Griffin,* 222 S.W.3d 412, 415–16 (Tex. 2007) (*per curiam*); *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex. 1982) (nonbreaching party waived its right to rescind contract by (1) treating it as still in effect and (2) filing suit to enforce it); *Henry v. Masson*, 333 S.W.3d 825, 840–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("If the non-breaching party treats the contract as continuing after the breach, he is deprived of any excuse for terminating his own performance. . . .").[11]

A recent case from the Eastern District of Texas is directly on point. In *WorldVentures Mktg., LLC v. Rogers*, 2018 WL 4169049, at 5 (E.D. Tex. Aug. 30, 2018), Rogers—a former employee who had "achieved 'high levels of sales and recruitment' within WorldVentures' marketing structure"—argued that he had been released from confidentiality, non-compete, and non-

---

[10] Plaintiff not only seeks damages for past commissions allegedly due, but also seeks to enforce future alleged payment obligations under the post-termination pay-out provisions of the agreement. *See* Docket No. 63 ¶ 46. In fact, Plaintiff seeks prospective injunctive relief "requiring Defendants to continue to pay Rekiel the accurate amount of compensation going forward, and to generally comply with the terms of the Agreement[.]" *Id.*, ¶ 48.

[11] Indeed, Plaintiff has admitted in her live pleading that after learning of Wardlaw's alleged "breach" she has retained ongoing benefits from the agreement, has treated the agreement as continuing, and remained bound by the agreement. *Compare* Docket No. 59 (Counterclaims ¶¶ 61-64) and the corresponding admissions in Docket No. 63. "A judicial admission is a formal concession in the pleadings . . . by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-477 (5th Cir. 2001). *Accord Halprin v. FDIC*, 2018 WL 4088795, at 3 (W.D. Tex. Aug. 27, 2018) (Pitman, J.).

8

solicitation provisions of his employment agreement because WorldVentures had first breached the agreement by failing to properly pay him commissions. *Id*. The Court rejected the contention because Rogers had treated the contract as continuing by remaining in his position for "several *months*" and accepting commissions. *Id*.:

> However, even if the Court were to find that WorldVentures breached the Agreements by withholding or delaying commission payments, Rogers is not entitled to avoid his own performance under the Agreements.

> Under Texas law, when presented with a material breach, "the non-breaching party must . . . elect between two courses of action—continuing performance under the contract or ceasing to perform." *Henry v. Masson* . . . "[A] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Long Trusts v. Griffin* . . . The record here establishes that Rogers continued in his role as a WorldVentures Representative and IMD until July 2018, several months after WorldVentures withheld or delayed commissions beginning at the end of 2017. Thus, even assuming that the failure to pay commissions constituted a material breach, Rogers waived his right to avoid performance by treating the Agreements as continuing.

Thus, the Court held that Rogers remained bound by his employment agreement, which stated (*id*., at 3) that Rogers "had access to WorldVentures' confidential, proprietary, and trade secret-protected information, and also expressly stated that unauthorized use of such information constitutes a breach of the Agreements." The Court issued a preliminary injunction enjoining Rogers from further breaching the agreement.

Here, Plaintiff continued in her employment for several <u>*years*</u> after she claims she knew (in July 2016) that Wardlaw had breached her employment agreement. Thus, as a matter of law she was not excused from complying with the confidentiality, security, and other provisions of the employment agreement and the undisputed summary judgment evidence establishes as a matter of law that Plaintiff materially breached the agreement in numerous respects by, *e.g.*, using a Wardlaw computer to transfer copies of proprietary documents without permission to a computer system not controlled by Wardlaw, *etc*.

II.

**AS A MATTER OF LAW, WARDLAW IS ENTITLED TO SUMMARY JUDGMENT THAT PLAINTIFF BREACHED FIDUCIARY DUTIES OWED TO WARDLAW.**

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *Mandel v. Thrasher,* 578 Fed. App'x. 376, 388 (5th Cir. 2014). As to the first element, under Texas law, an employee owes fiduciary duties to her employer. *E.g.*, *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 30 (Tex. App.—Texarkana 2018, pet. denied); *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762–763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). As to the second element, an employee's duties include, *e.g.*, a duty to "not appropriate his employer's trade secrets' or 'carry away certain information, such as lists of customers.'" *Windsor v. Olson*, 2019 WL 2080021, at 21 (N.D. Tex. May 10, 2019) (quoting *Rimkus Consult. Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 668 (S.D. Tex. 2010) (quoting *Navigant Consult., Inc. v. Wilkinson*, 508 F.3d 277, 284 (5th Cir. 2007)). As to the third element, Plaintiff's misappropriations, themselves, establish the third element. Additionally, Wardlaw suffered injury and Plaintiff received a benefit by Plaintiff's surreptitious conduct because had Wardlaw contemporaneously known of Plaintiff's conduct in August 2016 it would have promptly fired Plaintiff for cause (*see* Ex. 3 ¶ 9.03; Ex. 31, 32) and, thereby, would  have been relieved from any further payment obligations to Plaintiff. *See* Ex. 3 ¶ 9.02. Conversely, by furtively breaching her fiduciary duties Plaintiff obtained the benefit of continued receipt of commissions while simultaneously secretly stealing proprietary company information. Further, Wardlaw suffered legal injury when Plaintiff purloined a document containing privileged attorney-client communications. Sealed Ex. 22. Finally, in any event, as discussed below Wardlaw need not prove damages in order to recoup commissions paid to Plaintiff.

III.

**AS A MATTER OF LAW, PLAINTIFF'S STATUTE OF LIMITATIONS DEFENSE IS WITHOUT MERIT REGARDING ANY OF WARDLAW'S COUNTERCLAIMS.**

Plaintiff has asserted a statute of limitations defense. *See* Docket No. 63. Determining whether a statute of limitations has run is a question of law. *See*, *e.g.*, *Gillmann v. Fisher*, 2018 WL 6430833, at 2 (W.D. Tex. July 23, 2018) (**Manske, MJ**.), *rep. and recomm. adopted*, 2018 WL 6430831 (W.D. Tex. Sept. 26, 2018) (**Albright, J.**). In this case, each of Wardlaw's counterclaims is a compulsory counterclaim—as Plaintiff has expressly admitted in her pleadings (Docket No. 63 (p. 14 ¶ 10))—and compulsory counterclaims relate back to the date suit was filed, here January 27, 2018. *E.g.*, *Songcharoen v. Plastic & Hand Surgery Assoc., PLLC*, 561 Fed. App'x. 327, 341 (5th Cir. 2014); *DAC Surg. Partners P.A. v. United Healthcare Serv., Inc.*, 2016 WL 7177881, at 22 (S.D. Tex. Dec. 8, 2016). Thus, because (1) the *shortest* statute of limitation applicable to any of Wardlaw's counterclaims is two years;[12] (2) the *earliest* Plaintiff began her misappropriations (and, therefore, the earliest date on which a cause of action could have accrued) was August 15, 2016; (3) Plaintiff filed suit on January 27, 2018, less than two years later; and (4) Wardlaw's counterclaims all relate back to the date of suit, as a matter of law Plaintiff's statute of limitations affirmative defense is without merit.

IV.

**PLAINTIFF'S BREACHES OF CONTRACT AND FIDUCIARY DUTY ENTITLE WARDLAW TO TREAT THE EMPLOYMENT AGREEMENT AS REPUDIATED; THEREBY (1) RELEASING IT FROM FURTHER OBLIGATIONS UNDER THE AGREEMENT; AND (2) ENTITLING IT TO RECOUP ALL INCOME PAID TO PLAINTIFF AFTER AUGUST 15, 2016.**

"[P]ut to an election of either continuing or ceasing performance," *Bd of Regents of Univ. of*

---

[12] Breach of contract and fiduciary duty (4 years, Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(5) and 16.051); conversion (2 years, *id*.); misappropriation of trade secrets (3 years, *id*., § 16.010); Tex. Theft Liab. Act (2 years, *Malik v. ConocoPhillips Co.*, 2014 WL 3420775, at 5 (E.D. Tex. June 23, 2014)); Fed. Def. Trade Secrets Act (3 years, 18 U.S.C. § 1836 (d)); FCFAA (2 years, 18 U.S.C. § 1030 (g)); Harmful Access by Computer Act (5 years, Tex. Civ. Prac. & Rem. Code § 143.001 (b)).

11

*Tex. v. S & G Const. Co.,* 529 S.W.2d 90, 97 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.), Ward-law has elected to treat the agreement as repudiated and cease performance. *See United Teacher's Assoc. Ins. Co. v. MacKeen & Bailey, Inc.*, 847 F.Supp. 521, 542 (W.D. Tex. 1994), *aff'd in relevant part*, 99 F.3d 645, 651 (5th Cir. 1996) ("We find that the district court did not clearly err in finding that the contract was repudiated in and discharging all parties from remaining ob-ligations under the contract."); *Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994, no writ) (trial court may grant unilateral rescission for a material breach of contract). "It is a fundamental principle of contract law that when one party to a contract com-mits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush–Schnitzius Foods Co. v. Cimco Refrig., Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (citations omitted). *Accord In re Simons Broad., L.P.*, 2013 WL 9542015, at 5 (W.D. Tex. Nov. 19, 2013) ("Because Simons failed to perform a contractual obligation pursuant to his al-leged agreement with Milbank, Simons is not entitled to the 10% fee under that agreement.").

Similarly, Plaintiff's breach of fiduciary duty also excuses Wardlaw from further perfor-mance under the agreement. *See United Teacher's Assoc. Ins. Co.*, 847 F.Supp. at 542 ("Breach of a confidential or fiduciary duty, if proved, can justify the rescission of a contract. . . . [T]he Court sees no reason why the same breaches should not constitute repudiation and, conse-quently, permit the renunciation of a contract."). Accordingly, Wardlaw is entitled to declarato-ry judgment that it is released from further obligations under the agreement.

In addition to releasing Wardlaw from further obligations under the employment agree-ment, Plaintiff's breaches of fiduciary duty also entitle Wardlaw to recoup commissions paid to Plaintiff after August 15, 2016, as a forfeiture or disgorgement. *See, e.g.*, *First United Pentecos-tal Church v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) ("[A]n agent should not escape liability for, and retain the profits from, breaching the duty of loyalty to a principal simply because the principal might not be able to prove that the breach caused damages."); *Burrow v. Arce,* 997 S.W.2d 229, 239 (Tex. 1999) ("Texas courts of appeals, as well as courts in other jurisdictions and respected commentators, have also held that forfeiture is appropriate without regard to

whether the breach of fiduciary duty resulted in damages."); *Cent. Texas Ortho. Prod., Inc. v. Espinoza*, 2009 WL 4670446, at 5–6 (Tex. App.—San Antonio Dec. 9, 2009, pet. denied) ("[A] party's breach of fiduciary duty may forfeit that party's right to earned compensation"). As the Texas Supreme Court stated in *Burrow v. Arce*, *supra* (emphasis added):

> As we have already noted, section 469 of the RESTATEMENT (SECOND) OF AGENCY provides:
>
> > An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; *if such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned*.
>
> . . . Comment a states in part: "An agent is entitled to no compensation for a service which constitutes a violation of his duties of obedience." Comment e adds that a "principal can maintain an action to recover the amount" of compensation paid to an agent to which the agent is not entitled. . . .
>
> *See also* RESTATEMENT (THIRD) OF AGENCY § 8.01, cmt. d.2.

Further, Wardlaw's entitlement to recoupment is not dependent on proof of damages arising from Plaintiff's conduct. *E.g.*, *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d at 30:

> As the Texas Supreme Court noted, when an agent breaches his fiduciary duty, he is entitled to no compensation for conduct related to the breach, and if his breach is willful, "he is not entitled to compensation even for properly performed services." *Burrow*, 997 S.W.2d at 244 (quoting Restatement (Second) of Agency § 469 (1958)). The main purpose of these equitable remedies "is not to compensate an injured principal," but rather "to protect relationships of trust by discouraging agents' disloyalty." [*ERI Consulting Engineers, Inc. v.*] *Swinnea*, 318 S.W.3d [857] at 872–73 [(Tex. 2010)] (quoting *Burrow*, 997 S.W.2d at 238).

*Accord Burrow v. Arce*, 997 S.W.2d at 238:

> Pragmatically, the possibility of forfeiture of compensation discourages an agent from taking personal advantage of his position of trust in every situation no matter the circumstances, whether the principal may be injured or not. The remedy of forfeiture removes any incentive for an agent to stray from his duty of loyalty based on the possibility that the principal will be unharmed or may have difficulty proving the existence or amount of damages.

Here, the summary judgment evidence establishes that Plaintiff's misappropriation of nearly 1,400 pages of company documents on repeated occasions over a span of nine months was

an intentional, deliberate, and willful breach—flagrant violations, apparently committed with the active concert and participation of her attorney!!! *See* Ex. 1 (121:6 to 121:10; 163:1 to 163:4; 172:2 to 172:10); *Sealed Ex. 98*. Consequently, Plaintiff "is not entitled to compensation even for properly performed services," *Burrow*, 997 S.W.2d at 244, after August 15, 2016. As the summary judgment evidence (Exs. 26, 28-30, 33) and Plaintiff's admissions in her pleadings[13] establish, Plaintiff was paid the following amounts after August 15, 2016: (1) 2016, $143,473.39; (2) 2017, $401,361.66; (3) 2018, $486,750.82; and (4) 2019 (through the date payments were suspended), $54,613.27. Thus, as a matter of law Wardlaw is entitled to judgment against Plaintiff in the amount of $1,086,199.14, plus pre and post judgment interest.

**V.**

**WARDLAW IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD IN THE INDUCEMENT, FRAUD AND PROMISSORY ESTOPPEL CLAIMS.**

**A. Fraudulent Inducement: Plaintiff Has Produced No Evidence On The Third, Fifth, Or Sixth Elements Of Her *Prima Facie* Case:**

Plaintiff contends (Docket No. 63 ¶ 49(a)) that she was fraudulently induced to enter into the employment agreement by a pre-agreement representation "that Defendants would pay her pursuant to the compensation terms in the Agreement, when Defendants had no intention of actually doing so." In her deposition, Plaintiff described a single pre-agreement conversation with Mike Wardlaw regarding proposed compensation on which the claim is based. Ex. 1 (92:24 to 94:2).

Under Texas law, the elements of *fraud* are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party-acted in reliance on the representation; and (6) the party thereby suffered injury.

---

[13] *See* Docket No. 59 (Counterclaims ¶¶ 87-90) and the admissions in Docket No. 63.

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009). To recover for fraudulent *inducement*, "Plaintiff must prove all the elements of common law fraud . . . and additionally establish that she actually entered into a binding agreement with Defendant based on the alleged representation." *Jacquez v. Compass Bank*, 2016 WL 3017418, at 12 (W.D. Tex. May 24, 2016). As a matter of law, Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact on the third, fifth, or sixth elements.

First, Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact that Mike Wardlaw's pre-agreement statement regarding future compensation was made with no intention of performing at the time it was made. *E.g., Hall v. Douglas*, 380 S.W.3d 860, 870-71 (Tex. App.—Dallas 2012, n.p.h.). In order to prevail, Plaintiff must present evidence that Wardlaw made the representation with the intent to deceive and with no intention of paying her in accordance with the agreement at the time the representation was allegedly made. *Id.*; *Ikon Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "The mere failure to perform a[n alleged] contract is not evidence of fraud." *Schwager v. Telecheck Servs., Inc.*, 2002 WL 31995012, at 3 (Tex. App.—Houston [14th Dist.] Dec. 19, 2002, n.p.h.). "Proving a party lacked intent to perform at the time a promise was made is 'not easy' because intent to defraud is usually unsusceptible to direct proof." *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 66 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Here, as discussed below, for the first fifteen months of Plaintiff's employment—from October 2011 through the end of 2012—Plaintiff was indisputably properly paid in accordance with the agreement. Although not conclusive, such "partial performance can negate an intent not to keep a promise at the time it was made[.]" *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 835 (Tex. App.—Houston [1st Dist.] 2015, no pet.), *citing Lightsource Analytics, LLC v. Great Stuff, Inc.*, 2014 WL 798069, at 2 (W.D. Tex. Feb. 27, 2014)). Plaintiff has produced no evidence sufficient to raise a genuine issue of material fact on the third element.

Second, to establish the fifth element of a fraud claim, *i.e.*, reliance, a plaintiff must estab-

15

lish that her reliance on the alleged misrepresentation was reasonable and justified. *E.g.*, *Miller Global Prop., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 347–348 (Tex. App.—Dallas 2013, pet. denied); *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, 2008 WL 1991738, at 2 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied). Here, Plaintiff cannot sue for fraudulent inducement because she was an employee-at-will and any reliance on a pre-employment representation of a prospective employer concerning terms and conditions of employment is, as a matter of law, not reasonable. *E.g.*, *Allamon v. Acuity Spec. Prod., Inc.*, 877 F. Supp. 2d 498, 518–519 (E.D. Tex. 2012), *aff'd*, 534 Fed. App'x. 248 (5th Cir. 2013) ("An at-will employee's claim for fraudulent inducement is also precluded as a matter of law."); *Hanold v. Raytheon Co.*, 662 F.Supp.2d 793, 806 (S.D. Tex. 2009) ("Because of his status as an at-will employee, Plaintiff Hanold's cause of action for fraudulent inducement must fail."); *Cahak v. Rehab Care Group, Inc.*, 2008 WL 3112083, at 3 (Tex. App.—Waco Aug. 6, 2008, n.p.h.) ("An at-will employee's claim for fraudulent inducement is . . . precluded as a matter of law.").

Third, Plaintiff has failed to produce any evidence of damages apart from the alleged failure to pay commissions under the contract. She has produced no evidence of the sixth element, *i.e.*, of damages arising from allegedly having been induced into entering into the employment agreement.

## B. Wardlaw Is Entitled To Summary Judgment On Plaintiff's Fraud And Promissory Estoppel Claims:

Plaintiff also alleges fraud and promissory estoppel claims based on three alleged post-contract-formation "representations." Docket No. 63 ¶ 49(b)-(d); Ex. 1 (18:16 to 18:23). Specifically, she contends: (1) each paycheck/pay stub each pay period was a "fraudulent" representation that she was being paid properly; (2) at a management meeting in July 2016, after announcing a new commission structure for field managers "Mike Wardlaw . . . verbally assured her that new compensation arrangement would not affect her;" and (3) the next day Wardlaw's then-Vice President of Business Operations, Jeff  "Keahey told Rekiel that she was being paid correctly[.]" *Id*. As a matter of law, Wardlaw is entitled to summary judgment on these claims.

### *1. A Promissory Estoppel Claim is Precluded By the Existence of a Valid, Express Contract:*

*See*, *e.g.*, *Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 446320, at 7 (E.D. Tex. Jan. 17, 2018) ("The law is clear that quasi-contractual claims are unavailable when a valid, express contract governing the subject matter of the dispute exists.").

### *2. Fifth Element: Plaintiff Has Produced No Evidence of Reasonable/Detrimental Reliance:*

As with fraudulent inducement, Plaintiff's status as an employee-at-will precludes her fraud and promissory estoppel claims as a matter of law. *See*, *e.g.*, *Sawyer v. E.I. Du Pont De Nemours and Co.*, 430 S.W.3d 396 (2014) (employee at-will cannot sue employer for fraud based on terms and conditions of employment); *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, 2008 WL 1991738, at 2 (promissory estoppel requires reasonable and justified reliance). Moreover, Plaintiff's "reliance" on any of these alleged representations would not have been reasonable because Plaintiff at all times under the employment agreement had the right to review Wardlaw's financial records to ensure proper compensation. Ex. 3 (¶ 2.04). However, Plaintiff admittedly (Ex. 1 (73:23 to 75:23)) made no such request *for the first five and a half years of her employment*. The first time she asked to review such records was April 24, 2017. Ex. 27.

Finally, regarding the alleged statement by Keahey, Plaintiff's deposition testimony also negates any claim of reliance because Plaintiff testified that, rather than detrimentally *relying* on the statement, she promptly concluded in July 2016 she was being "cheated" and thereafter in August embarked on her campaign to purloin Wardlaw documents. Ex. 1 (133:6 to 133:25).

### *3. First and Third Elements: No Evidence of Knowingly False Statement:*

First, Plaintiff cannot predicate any fraud claim on receipt of her paychecks/stubs. The stubs (*see* Exs. 4, 6, 9) do not constitute any "statement" at all other than of the dollar amounts reflected on them, which were indisputably paid to Plaintiff. The paychecks/pay stubs constitute no representations whatsoever regarding the *manner* in which Plaintiff's commissions were calculated. Ex. 1 (94:10 to 95:12: "Q. Now, within the four corners of this document, is there anything in here you contend is false? A. It's a pay stub. It's what they paid me. So, no." 101:23 to 101:25).

17

Second, Plaintiff negated any fraud based on Mike Wardlaw's statement to her in July 2016, because Plaintiff testified that the statement was, in fact, *true*, not false! Ex. 1 (96:23 to 97:12: "Q. So there wasn't anything false about what he told you, was there? A. No. Not about that. Huh uh.").

Finally, Plaintiff has failed to produce any evidence that Keahey's statement in July 2016 that Plaintiff was being properly paid was knowingly false or recklessly made.

### 4. The Claims Are Barred By The "Economic Loss Rule":

The fraud and promissory estoppel claims based on alleged post-contract formation representations are also barred by the "economic loss rule," because—as Plaintiff admitted during her deposition (Ex. 1 (101:1 to 101:16)), the only "damages" she allegedly suffered from the claims are the commissions she is seeking for her breach of contract claim. *E.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) ("[W]e held that the parties' economic losses were more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims."); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.").

### VI.

### WARDLAW IS ENTITLED TO PARTIAL SUMMARY JUDGMENT FOR ANY BREACH OF CONTRACT CLAIM BASED ON COMPENSATION PAID BEFORE JANUARY 1, 2013.

It is undisputed that at least from October 11, 2011, through December 31, 2012, Plaintiff's compensation was governed by ¶ 2.01 ($5,000 per pay period) and ¶ 2.02 (plus 5% commission on business Plaintiff generated) under the agreement. Ex 1 (33:1 to 33:3). But, Plaintiff admits:

➢ In 2011 she did not *earn* any commissions under ¶ 2.02 and was properly paid $5,000 salary per pay period under ¶ 2.01. Ex. 1 (25:11 to 26:13 "Q. So would you agree, then, that in 2011, you got paid everything you were entitled to under the agreement? A. Yes."). *See also* Exs. 4 and 5.

18

➢ Throughout all of 2012 she continued to be properly paid $5,000 salary per pay period under ¶ 2.01. Ex. 1 (29:5 to 29:13; 30:25 to 31:4). *See also* Exs. 6 and 7.

➢ Additionally, beginning in August 2012, she began to receive commissions under ¶ 2.02. Ex. 1 (31:5 to 31:21), Ex. 7.

Plaintiff has produced no evidence that she was improperly paid in 2011 or 2012. In fact, she was properly paid in all respects under ¶¶ 2.01 and 2.02. Ex. 1 (34:17 to 34:21); Ex. 32.

## VII.

## AS A MATTER OF LAW, AS OF JANUARY 1, 2013, ¶¶ 2.01 AND 2.02 NO LONGER GOVERNED PLAINTIFF'S COMPENSATION.

Plaintiff contends that *throughout* her entire employment—from October 2011 through March 2018—her compensation was governed by ¶ 2.01 ($5,000 salary per pay period) and ¶ 2.02 (5% on her book of business) of the agreement and that she *never* should have been paid pursuant to ¶ 2.03 (1% of all service fees). Ex. 1 (20:13 to 20:20). *See* Docket No. 63 ¶¶ 13, 14, 39, 40, and 45. Specifically, she contends Wardlaw never validly invoked the optional compensation method (1% of all service fees) authorized under ¶2.03 of the agreement because she was never provided with *written* notice of such a decision under the literal terms of the agreement. As a matter of law, Plaintiff's contention is without merit. *Id*.

First, the summary judgment evidence is undisputed that *twice* in December 2012—including once in a recorded phone conversation (Exs. 8, 31)—Mike Wardlaw expressly informed Plaintiff that beginning January 1, 2013, Wardlaw would invoke the option to pay Plaintiff under the alternative compensation method of ¶ 2.03 (1% of all service fees). Ex. 1 (35:19 to 51:19, emphasis added):

**Rekiel**:    Yeah, the other thing I wanted to ask you before is um y*ou said after this year that I'm going on the 1%, is that still your plan*?

**Wardlaw**: *January 1 yeah*.

**Rekiel**:    Okay, so how will that work with this year storms? Cause I'm getting paid as we go, I get paid as you get paid—I'm assuming, have you guys talked about that?

**Wardlaw**: Yes, it will just, you know whatever gets paid *after January 1 you get 1%, everything*.

19

**Rekiel**:      *Okay, okay*.

**Wardlaw**: You're not gonna', but then again *you got a guarantee of a minimum of your 120* so—

**Rekiel**:      *Okay*.

**Wardlaw**: So if it's not that, then you know there will be some juggling we'll have to do to make sure it comes out that you're getting what you, you know *at least your minimum*.

**Rekiel**:      Uh-huh. *Okay*.

**Wardlaw**: It'll be that we have to watch the numbers and massage those as we go and *once you've exceeded that amount then it will be the 1%*.

**. . . Rekiel**:      Okay, alright, *okay, okay* I was just trying to figure it out so I can plan for next, *how things are going to be going from this time on* so and um—

**Wardlaw**: Like I said there's no, you know, the 1% is just a moving target, you know I mean *it's going to be 1% of the fee* that's charged by the adjuster for the adjusting service so, however those come in, I mean *that's what you're gonna' get always the 1% of that and* like I said *you have your minimum guarantee of the $120*, so—

**Rekiel**:      *Okay*, *alrighty*, well let's hope I can continue to grow.

Plaintiff *repeatedly* acknowledged during her deposition that she was *contemporaneously* aware that beginning January 1, 2013, Wardlaw would no longer be compensating her under ¶¶ 2.01 and 2.02 of the agreement. Ex. 1 (34:22 to 35:11; 52:12 to 53:2; 62:14 to 62:21; 63:17 to 64:1). Additionally, in numerous subsequent emails between January 2013 and February 2015 Plaintiff expressly acknowledged that she was aware that after January 1, 2013, she was no longer being compensated under ¶¶ 2.01 and 2.02, but under ¶ 2.03. *See* Exs. 10-13, 15-20, 22 and 24 and related *Appendix* footnotes.

Second, despite having been orally informed of Wardlaw's decision, Plaintiff—an employee-at-will—intentionally chose to continue working for Wardlaw. Ex. 10 ("My new agreement is less . . . [but] I like this company and will stick with them as long as I don't get screwed over too bad!!"); Ex. 1 (64:13 to 65:13; 65:22 to 66:20: "Q. So you made a conscious choice to stay working at Wardlaw even after Mike Wardlaw told you that the company was going to move you to one percent of everything, true? A. Yes."). "Generally, when the employer notifies an employee

20

of changes in employment terms, the employee must accept the new terms or quit." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). "If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law. [*L.G.*] *Balfour* [*Co. v. Brown*]*,* 110 S.W.2d [104] at 107. [(Tex. Civ. App.—Fort Worth 1937, no writ)]." *Id*. Thus, under Texas law, by choosing to stay employed by Wardlaw Plaintiff accepted the change to her compensation as a matter of law. *E.g.*, *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex. 2002), *cert. denied*, 537 U.S. 1112 (2003); *Allamon*, 877 F. Supp. 2d at 518–19.[14]

Consequently, as a matter of law ¶¶ 2.01 and 2.02 no longer governed Plaintiff's employment after January 1, 2013.

## VIII.

## THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM AND ANY BREACH OF CONTRACT CLAIM BASED ON COMMISSIONS ALLEGEDLY DUE BEFORE JANUARY 27, 2014.

In Texas, the statute of limitations for fraud and breach of contract is the same—four years. *See*, *e.g.*, TEX. CIV. PRAC. & REM. CODE §§ 16.004(a)(5), 16.051. A plaintiff must bring his claim within four years of when the cause of action accrues. *Dortch v. Boxer Prop. Mgmt. Corp.*, 2018 WL 3431733, at 3 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.). A cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *E.g.*, *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). The determination of when a cause of action accrues is a question of law. *E.g.*, *Moreno v. Sterling Drug*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of ac-

---

[14] This rule is not affected in this case by the provision of the agreement which purported to require any modification of the agreement to be in writing signed by the parties. Under Texas law a written agreement that is not subject to the Statute of Frauds may be orally modified by agreement, notwithstanding a modification-only-in-writing provision. *E.g.*, *Allamon*, 877 F. Supp. 2d at 518–19; *Ortega v. Murrah*, 2016 WL 6803359, at 4 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, pet. denied); *Pointe W. Ctr., LLC v. It's Alive, Inc.*, 476 S.W.3d 141, 151 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

tion for breach of contract generally accrues when the contract is breached. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002). A claim for failure to properly pay commissions accrues every time commissions are allegedly paid in an incorrect amount. *See Truman Arnold Cos. v. Hammond & Consult. Enterprises, Inc.,* 2010 WL 2982912, at 1–2 (Tex. App.—Tyler July 30, 2010, no pet.); *Spring v. Walthall, Sachse & Pipes, Inc.,* 2010 WL 2102988, at 5 (Tex. App.—San Antonio May 26, 2010, no pet.). Limitations on a fraud claim generally does not begin to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence. *See Little v. Smith,* 943 S.W.2d 414, 420 (Tex. 1997).

Plaintiff filed suit on **January 27, 2018**. Thus, absent some sort of tolling, Plaintiff may not pursue any fraud or breach of contract claim predicated on actions which occurred on or before **January 27, 2014,** and which was discovered or might have been discovered by the exercise of reasonable diligence. Two potential tolling arguments exist: (1) the "discovery rule;" and (2) "fraudulent concealment." Although similar in their tolling effect, the "discovery rule" and "fraudulent concealment" are distinctly different theories. *See*, *e.g.*, *Pemex Exploracion y Produccion v. BASF Corp.,* 2013 WL 5514944, at 32 (S.D. Tex. Oct. 1, 2013); *Cody Texas, L.P. v. BPL Expl., Ltd.,* 513 S.W.3d 522, 539 n. 3 (Tex. App.—San Antonio 2016, pet. denied). The discovery rule, when applicable, will delay the *accrual of a cause of action* until a date later than when the wrongful act occurred. Whereas, fraudulent concealment, when applicable, will *toll the statute of limitations* for an accrued cause of action until such time as the plaintiff discovers the fraud or with the exercise of reasonable diligence could have discovered the fraud. *Cody*, *supra*. As a matter of law neither theory applies to Plaintiff's breach of contract or fraudulent inducement claim.

**A. AS A MATTER OF LAW, THE DISCOVERY RULE IS WHOLLY INAPPLICABLE:**

The discovery rule is a "very limited exception" to the application of statutes of limitations. *E.g.*, *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734 (Tex. 2001). Courts construe the application of the discovery rule strictly. *E.g.*, *Via Net v. TGI Ins. Co.,* 211 S.W.3d 310, 313 (Tex.

2006) (such cases "should be few and narrowly drawn"). Here, as a matter of law, the discovery rule is wholly inapplicable.

First, the pleading amendment deadline has passed and Plaintiff has not pleaded the discovery rule. *See*, *e.g.*, *Cao v. BSI Fin. Serv., Inc.*, 2017 WL 5157625, at 4 (S.D. Tex. Oct. 19, 2017), *rep. and recomm. adopted*, 2017 WL 5133289 (S.D. Tex. Nov. 6, 2017); *Taha v. William Marsh Rice Univ.*, 2011 WL 6057846, at 6 (S.D. Tex. Dec. 6, 2011) ("[Taha] has not pled the rule. Taha has therefore waived his ability to use the rule to avoid the statute of limitations.").

Second, in order for the discovery rule to apply, the alleged wrongful act and resulting injury: (1) must be inherently undiscoverable at the time they occurred; but (2) must be objectively verifiable. *Id*. *See*, *e.g.*, *Doe v. Henderson ISD*, 2000 WL 1701752 (5th Cir. 2000). "[A]n injury is inherently undiscoverable if it is by nature the type of injury that is unlikely to be discovered within the prescribed limitations period despite due diligence." *Janvey v. Dem. Sen. Camp. Comm.*, 793 F. Supp. 2d 825, 833–834 (N.D. Tex. 2011) (citation omitted), *aff'd*, 712 F.3d 185 (5th Cir. 2013). The inquiry focuses categorically on the type of injury alleged rather than on the circumstances of the particular case. *E.g.*, *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). Plaintiff's breach of contract claim fails to meet the criteria because underpayment of commissions is not an inherently undiscoverable claim. *See*, *e.g.*, *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d at 736-37; *HECI Exploration Co. v. Neel*, 982 S.W.2d881, 886 (Tex. 1998); *Slusser v. Union Bankers Ins. Co.,* 72 S.W.3d 713, 718 (Tex. App.—Eastland 2002, no pet.) (underpayment of commissions not inherently undiscoverable even though the employer controlled information regarding calculation of commission). Plaintiff had an affirmative duty to protect her own interests and ensure she was being properly paid. *E.g.*, *Beavers*, 566 F.3d at 439–40; *Via Net*, 211 S.W.3d at 314. She had the means available by which to do so, but for five and a half years made no effort whatsoever to use them. Ex. 1 (73:23 to 75:23).

### B. As A Matter Of Law, Plaintiff's Fraudulent Concealment Allegations Are Without Merit:

Plaintiff alleges Wardlaw fraudulently concealed the alleged underpayment of commis-

sions. Docket No. 63 ¶ 60. As recently stated by Judge Albright, *Yesteryear Auto LLC v. Synergistic Int'l LLC*, 2018 WL 7377942, at 6 (W.D. Tex. Dec. 21, 2018):

> The elements of fraudulent concealment are: (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the disclosed fact. *Newby* . . . . The party asserting fraudulent concealment must establish that the defendant (1) knew a wrong occurred; (2) had a fixed purpose to conceal the wrong; and (3) did conceal the wrong.

Further, fraudulent concealment applies to the concealment of a <u>*tort*</u>. *E.g.*, *Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.*, 2018 WL 1415650, at 5 (E.D. Tex. Feb. 23, 2018); *Hernandez v. Frazier*, 2012 WL 12896913, at 17 (W.D. Tex. Jan. 26, 2012) ("Plaintiffs have presented no evidence of Frazier's use of deceit to conceal a tort from them."), *rep. and recomm. adopted*, 2012 WL 12895539 (W.D. Tex. Sept. 19, 2012). Plaintiff bears the burden of raising a genuine issue of material fact regarding all elements of the defense. *E.g.*, *Yesteryear Auto*, *supra*. Plaintiff has failed to produce evidence regarding <u>*any*</u> of the elements of this affirmative defense.

First, the theory is inapplicable to Plaintiff's <u>*contract*</u> claim. *See*, *e.g.*, *Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.*, 2018 WL 1415650, at 5 (elements of fraudulent concealment include "the defendant's use of deception to conceal the tort").

Second, for the reasons previously stated, Plaintiff cannot establish or maintain a *tort* claim for fraudulent inducement. *E.g.*, *Allamon*, 877 F. Supp. 2d at 518–19 ("An at-will employee's claim for fraudulent inducement is also precluded as a matter of law."). Thus, there never was any "fraudulent inducement" tort claim which could have been "fraudulently concealed."

Third, "[e]ven under the discovery rule or the doctrine of fraudulent concealment, fraud claims accrue at the latest when Plaintiffs discover or should have discovered the fraud." *See Garcia v. Lion Mexico Consol. L.P.*, 2018 WL 6427350, at 16 (W.D. Tex. Sept. 14, 2018). Here, the summary judgment evidence—including Plaintiff's deposition—conclusively establishes that Plaintiff was aware of her fraudulent inducement and breach of contract claims <u>*no later than*</u>

24

*January 1, 2013*. Specifically, Plaintiff contends that ¶ 2.01 ($5,000 salary per pay period) and ¶ 2.02 (5% on her book of business) governed her compensation *throughout her entire employment and that she <u>never</u> should have been paid under ¶ 2.03* (1% of all service fees). Ex. 1 (20:13 to 20:20). *See also* Docket No. 63 ¶¶ 13, 14, 39, 40, and 45. However:

➤ Plaintiff repeatedly admits that she was <u>*contemporaneously aware as of January 1, 2013*</u>, that Wardlaw was then no longer compensating her under ¶¶ 2.01 and 2.02. Ex. 1 (34:22 to 35:11; 52:12 to 53:2; 62:14 to 62:21; 63:17 to 64:1); Exs. 8-24 and related footnotes.

➤ Further, Plaintiff <u>*should have been aware*</u> that she was no longer being compensated under ¶ 2.01 <u>*every time after January 1, 2013, that she received a paycheck of less than $5,000*</u>. *See* Exs. 9, 14, 21, 25, 26. In fact, she repeatedly raised questions with Bill Wardlaw about that very issue! Ex. 1 (61:5 to 61:16; 67:4 to 68:14; 82:6 to 83:11; 84:5 to 85:3); Exs. 11-13, 15-20, 22-24.

➤ Each paystub received after January 1, 2013, also put Plaintiff on notice that she was then no longer being paid $5,000 salary per pay period under ¶ 2.01. Each of her 2011-2012 pay stubs specifically listed "Salary" per pay period of $5,000. All 2013 and later pay stubs no longer indicated payment of any "salary," but commissions only. *Compare* Exs. 4 and 6 *with* Ex. 9; Ex. 1 (53:11 to 54:20; 54:10 to 56:14; 56:22 to 58:2).

➤ Finally, <u>*on January 4, 2013*</u>, Plaintiff expressly acknowledged to a friend, "My new agreement is less . . . [but] I like this company and will stick with them as long as I don't get screwed over too bad!!"). Ex. 10.

Thus, as a matter of law Plaintiff was on notice of her claims and the statute of limitations began to run on Plaintiff's breach of contract and fraudulent inducement claim <u>*no later than January 1, 2013*</u>. *See Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d at 718-19, which is dispositive. In *Slusser*, after holding that application of the discovery rule to a claim for unpaid commissions ended in 1992 when the plaintiff was "put . . . on notice that [his employer] might be underpaying the amount of commissions due" (*id.*, at 718), the court likewise held that any fraud or fraudulent concealment in connection with the commission payments necessarily should likewise also have been discovered by reasonable diligence beginning in 1992.

Fourth, because the statute of limitations on both her contract and fraudulent inducement claims began to run no later than January 1, 2013, all of the *subsequent* alleged acts of "fraudulent concealment" asserted by Plaintiff (Docket No. 63 ¶ 60) are wholly irrelevant and do not

25

serve to toll limitations. As a matter of law, reliance on any such representations would have been unreasonable. *See Cody Texas*, 513 S.W.3d at 539–40 ("Reliance on a fraudulent representation 'is not reasonable when information revealing the truth could have been discovered within the limitations period.'" *quoting BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 68 (Tex. 2011); *Slusser*, 72 S.W.3d at 719 (rejecting plaintiff's contention limitations was tolled based on representations made after plaintiff was on notice of his commission underpayments).

Accordingly, because Plaintiff did not file suit until January 27, 2018, her fraudulent inducement claim is barred by limitations and she cannot base her breach of contract claim on any alleged underpayment of commissions before January 27, 2014. *See Truman Arnold Cos.*, 2010 WL 2982912, at 2 ("[A] claimant can recover any unpaid commissions that became due within the limitations period, but commissions due outside the limitations period are barred.").

<u>CONCLUSIONS AND REQUESTED RELIEF</u>

For all of the foregoing reasons, Wardlaw's motion for summary judgment should be, in all things, **GRANTED**. Wardlaw is entitled to judgment that it is relieved of further obligations under the employment agreement and to judgment against Plaintiff for recoupment of commissions paid after August 15, 2016. Plaintiff's remaining claims should be limited to breach of contract for allegedly unpaid commissions between January 27, 2014 (the earliest date to which the statute of limitations does not apply) and August 15, 2016 (when Plaintiff breached the employment agreement and her fiduciary duties, thereby relieving Wardlaw of further payment obligations under the agreement).

Respectfully Submitted,

**/s/ John L. Ross**

**JOHN L. ROSS**
Texas State Bar No. 17303020
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:     (214) 871-8206
Fax:               (214) 871-8209
**ATTORNEYS FOR DEFENDANT**

26

## CERTIFICATE OF SERVICE

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and (b)(3), I certify a true and correct copy of the foregoing document was filed electronically the 17th day of June 2019. Thereby, through the electronic filing system, a copy of the foregoing document was served on Plaintiff's counsel of record.

/s/ John L. Ross
JOHN L. ROSS